**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 15-10134-CIV-GOODMAN**
**[CONSENT CASE]**

CAROLYN ELLIS,

      Plaintiff,

v.

RICHARD E. WARNER, et al.,

      Defendants.

_____/

**OMNIBUS ORDER ON MOTIONS TO DISMISS**

      This case is about allegations, including those asserting racketeering and racketeering conspiracy, of activities designed to funnel the proceeds of unlawful activity into a cat rescue charity. Specifically, the lawsuit alleges a wide-ranging conspiracy to defraud the estate of Sally Buehler ("Sally"), who is Plaintiff Carolyn Ellis ("Plaintiff")'s mother, and other decedents and funnel the proceeds into Forgotten Felines, Inc. ("Forgotten Felines"), a cat rescue charity.

      Cats are said to have nine lives,[1] but this cat-related lawsuit is already on its fourth life and Plaintiff will be hard-pressed to breathe a fifth life into some of her

---

[1]     For example, the American rockabilly band Stray Cats released a song entitled *Nine Lives* on BLAST OFF! (EMI Records 1989) and William Shakespeare referenced this

claims. But other claims have survived for now in their fourth legal life, though they may not live beyond the summary judgment stage.

The legal details of this cat-focused alleged drama are outlined below:

Plaintiff filed a Corrected Second Amended Complaint ("SAC") -- the fourth version of the Complaint -- against Defendants Richard E. Warner ("Richard"), Nancy A. Warner ("Nancy"), Richard Warner, P.A. ("the Law Firm"), Pamela Steadman ("Steadman"), Joy Tatgenhorst ("Tatgenhorst"), and Forgotten Felines (referred to collectively as "Defendants"). [ECF No. 86].

Plaintiff's SAC includes six counts: tortious interference with inheritance (Count 1); Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 2); conspiracy to violate RICO (Count 3); Florida Criminal Practices Act ("CRCPA") (Count 4); Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 5);[2] and constructive trust (Count 6). [ECF No. 86].

Defendants Richard, Nancy, and the Law Firm ("Warner Defendants") and Steadman, Tatgenhorst, and Forgotten Felines ("Non-Warner Defendants") filed motions to dismiss Plaintiff's SAC, which include both jurisdictional and sufficiency

---

proverb in *Romeo and Juliet* (i.e., when Mercutio says, "Good king of cats, nothing but one of your nine lives"). WILLIAM SHAKESPEARE, ROMEO & JULIET, Act. 3, Sc. 1.

[2]     The Undersigned relabeled the FDUTPA count as Count 5 because Plaintiff's labeling of this Count as Count 6 appears to be a typographical error.

challenges. [ECF Nos. 93; 101]. Plaintiff filed responses in opposition to Defendants' motions to dismiss. [ECF Nos. 96; 105]. Warner Defendants and Non-Warner Defendants each filed a reply [ECF Nos. 100; 106].

Upon review of the motions, responses, replies, and the record, and for the reasons stated below, the Undersigned **grants in part and denies in part** Defendants' motions to dismiss. I am **denying** Defendants' motions as to Counts 1 and 4 (tortious interference with inheritance and CRCPA) but **granting** them as to the remaining counts. The Undersigned **dismisses** *without* **prejudice** Counts 2 and 3 (RICO and conspiracy to commit RICO) and **dismisses** *with* **prejudice** Counts 5 and 6 (FDUTPA and constructive trust). However, if Plaintiff wishes to assert the two federal RICO claims in a fifth version of the Complaint, then she will need to file a Civil RICO Case Statement. Moreover, she will still need to file a Civil RICO Case Statement in connection with the existing CRCPA count, even if she does not file a new version of the lawsuit.

## Allegations Regarding Sally's Death and the Forged Documents

Sally, Plaintiff's mother, died on May 22, 2011. [ECF No. 86, ¶¶ 36, 40]. From June 2006 to May 2011, Sally worked for the Law Firm as a house sitter for properties owned by the estates the Law Firm represented. [ECF No. 86, ¶¶ 36, 40]. Richard practices law at the Law Firm. The Law Firm also employs Nancy (Richard's wife),

Steadman, and Tatgenhorst. [ECF No. 86, ¶ 16]. Plaintiff alleges that Richard and Nancy established and are directors of Forgotten Felines, a non-profit cat rescue charity. [ECF No. 86, ¶ 15].

Plaintiff alleges that in January 2010, or five months before Sally died, Nancy drafted and forwarded to Sally her estate documents via email. [ECF No. 86, ¶ 37]. Plaintiff alleges that these documents included a will, power of attorney, and a healthcare proxy -- all of which listed Plaintiff as a beneficiary or grantee of an entrusted power. [ECF No. 86, ¶ 37].

Plaintiff then claims that at some undisclosed time (after January 2010 but before Sally's death), Nancy forged Sally's estate documents so that Nancy could have power of attorney and serve as Sally's healthcare proxy. [ECF No. 86, ¶ 38]. Plaintiff alleges that Nancy used these forged documents to limit Sally's contact with her children after she became ill and required hospitalization. [ECF No. 86, ¶¶ 38-39].

On June 6, 2011, Plaintiff further alleges, Nancy emailed Plaintiff that Sally had changed her mind about her estate plans shortly before she died. [ECF No. 86, ¶ 43]. On June 9, 2011, Plaintiff alleges, Defendants emailed Plaintiff a copy of Sally's new will, which was executed on April 30, 2011 (the "will"). [ECF Nos. 86, ¶ 44; 86-3]. This executed will did not include Plaintiff as a beneficiary or grantee and instead granted 85% of the sales of Sally's personal property to Forgotten Felines. [ECF No. 86-3]. The

remaining 15% of the proceeds were granted to Sally's son and Plaintiff's brother, Mark M. Buehler ("Mark"), through $1,000 increments if Mark proved to be sober to Sally's personal representative, and this determination could be revisited every six months. [ECF No. 86-3]. If Mark was not sober, then the will provided that Forgotten Felines would receive Mark's distributions. [ECF No. 86-3].

Plaintiff alleges that Defendants "ultimately, destroyed, donated or disposed of [Sally's] personal property, including but not limited to sentimental journals, financial records and photo-albums, leaving almost nothing to Sally Buehler's children." [ECF No. 86, ¶¶ 48-49].

Plaintiff further alleges that she began to doubt Defendants' honesty in August of 2011 and that despite her continuous demands to Defendants for information regarding Sally's assets, Defendants refused to provide the requested information. [ECF No. 86, ¶ 50].

**Predicate Acts Alleged in Support of the RICO and CRCPA Claims**

Plaintiff alleges that Defendants operate an ongoing, association-in-fact enterprise to undertake a coordinated scheme of deceptive and unlawful acts to confiscate property, unduly influence the estate plans of persons who seek legal advice, and forge documents, all for the purposes of self-aggrandizement. [ECF No. 86, ¶ 22].

Plaintiff claims that the documents prepared for Sally by Defendants were forgeries and part of a larger scheme to steal Plaintiff's inheritance. Plaintiff claims that (1) Richard and the Law Firm falsely drafted the will, the power of attorney, and healthcare proxy documents; (2) Tatgenhorst falsely witnessed the will; and (3) Steadman falsely notarized the will. [ECF No. 86, ¶ 54(A)]. Plaintiff claims that these acts violate 18 U.S.C. § 1956(a)(3)(B) ("Laundering of Monetary Instruments") and Florida Statutes §§ 817 ("Fraudulent Practices"), 825.103 ("Exploitation of an Elderly Person or Disabled Adult), 831.01 ("Forgery"), and 831.02 ("Uttering Forged Instruments"). [ECF No. 86, ¶ 54(A)].

Plaintiff alleges that Nancy used the forged healthcare proxy to admit Sally into hospitals, to control outside communication with Sally before her death and "inform[ed] Plaintiff on multiple dates in May 2011 via telephone calls[.]" [ECF No. 86, ¶ 54(B)]. Plaintiff claims that Nancy "used the forged power of attorney to take the property of Sally Buehler, by opening Sally's safe deposit box on or near June 8, 2011 and then informing via telephone calls Plaintiff on multiple dates thereafter that nothing was in said box[.]" [ECF No. 86, ¶ 54(C)]. Plaintiff claims that these acts violate 18 U.S.C. § 1343 ("Wire Fraud") and Florida Statutes §§ 817, 825.103, 831.01, and 831.02. [ECF No. 86, ¶¶ 54(B) & (C)].

Plaintiff alleges that on June 14, 2011, Richard, on behalf of the Law Firm, deposited Sally's forged will with the clerk of court in Monroe County, Florida and mailed notice of this filing to Plaintiff's siblings.  Plaintiff claims that this violates 18 U.S.C. § 1341 ("Mail Fraud") and Florida Statutes §§ 817, 825.103, 831.01, and 831.02. [ECF No. 86, ¶ 54(D)].

Plaintiff alleges that Forgotten Felines was falsely named the beneficiary of Sally's will and received her property and that this violates 18 U.S.C. § 1956(a)(3)(B) and (7)(A) and Florida Statutes, §§ 817, 825.103, 831.01, and 831.02. [ECF No. 86, ¶ 54(E)].

Plaintiff also alleges that she contacted local law enforcement and the FBI about Warner Defendants in 2012 and that Warner Defendants attempted "to intimidate Plaintiff into submissive acceptance of said losses by threatening through third persons violence to Plaintiff and by directly threatening Plaintiff with criminal prosecution and lawsuits in violation of 18 U.S.C. § 1512(b)(3) [Retaliation]." [ECF No. 86, ¶¶ 51-53, 54(G)]. Plaintiff alleges that Joseph Ardolino told Plaintiff over the phone to stop causing problems for Warner Defendants or "face the consequences." [ECF No. 86, ¶ 53].

**Plaintiff's Allegations as to Pattern in Support of her RICO and CRCPA Claims**

Plaintiff alleges that Defendants' racketeering scheme has been occurring for more than 10 years and victimized several other clients in the Key West community,

7

including Carolyn Wilson-Garrrison, Harold Guppy, Benson Martin, Joan Temple, Harry B. Decker, John Gergle, and Joseph Ardolino. [ECF No. 86, ¶¶ 29-35]. Plaintiff attaches Carolyn Wilson-Garrison's and Harold C. Guppy, Jr.'s wills as exhibits to the SAC. [ECF Nos. 86-1; 86-2].

Plaintiff alleges that Defendants also forged these non-party victims' estate planning documents to disinherit their family members. Plaintiff alleges that for these victims, Defendants included as beneficiaries in the forged probate documents non-profits associated with Defendants' enterprise, specifically Forgotten Felines and Whiskas & Paws. [ECF No. 86, ¶¶ 29-35].

**Key West Probate Proceeding**

On June 14, 2011, the will was deposited in the Monroe County Probate Court in a Disposition of Personal Property Without Administration ("Key West Probate Proceeding"). [ECF No. 93-2].[3] On June 21, 2011, Nancy filed a waiver to serve as a

---

[3]    The Undersigned will consider probate documents attached to Defendants' motions to dismiss even though they are not attached to Plaintiffs' SAC because "[c]ourts may take judicial notice of publicly filed documents . . . at the Rule 12(b)(6) stage." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 815 n. 4 (11th Cir. 2015) (citing Fed. R. Evid. 201(b)(2)).

However, the Undersigned will *not* take judicial notice of Plaintiff's power of attorney document attached to her response to Warner Defendants' motion to dismiss because Plaintiff only states that this document "was recently produced." [ECF Nos. 96, p. 8; 96-1]. As a result, the source of the document is unknown to the Undersigned, and thus its accuracy may be reasonably questioned. Moreover, it does not fit into one of the

personal representative for Sally's estate in the Key West Probate Proceeding. [ECF No. 93-1].

On June 19, 2012, Plaintiff filed a petition in the Key West Probate Proceeding and submitted several documents to the Court. The application filed by Plaintiff shows that she claimed that Sally's estate consisted of: (1) 3 glass lamps; (2) a 1987 Mazda truck; (3) costume jewelry; (4) $4,800 in cash contained in a safety deposit box; and (5) unknown amount(s) in bank account(s). [ECF No. 93-1]. On May 29, 2013, Mark also filed a similar petition for disposition of personal property without administration. [ECF No. 93-2]. The estate case was closed by Judge Tegan Slaton's Order, which was signed on July 12, 2013, and Sally's proceeds from her Safe Deposit Box held by Capital Bank were distributed to Mark. [ECF No. 93-2].

**<u>Motion to Dismiss Standard</u>**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable

---

recognized exceptions permitting a court to evaluate documents outside of the four corners of the complaint on a motion to dismiss.

Non-Warner Defendants attach to their motion the corporate records of Forgotten Felines [ECF No. 101-1] to support the assertion that Nancy and Richard did not establish the non-profit. However, my review of this factual dispute is premature at the motion to dismiss stage. Disputes over Nancy and Richard's establishment and control of Forgotten Felines are more appropriate at the summary judgment stage. Thus, I will not take judicial notice of Forgotten Felines' corporate records.

9

inferences drawn from those facts as true. *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not always necessary to prevent dismissal of a complaint, the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557 (alteration in original)).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient **factual** matter, accepted as true, to 'state a claim to relief that is **plausible on its face.**'" *Iqbal,* 556 U.S. at 678. (quoting *Twombly,* 550 U.S. 570) (emphasis added); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010). "[C]onclusory allegations, unwarranted deductions of fact, or legal

conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Moreover, when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal quotations omitted) (alteration in original).

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (internal quotations omitted). Although, as noted, a court must accept as true a plaintiff's allegations, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

11

**Analysis of Federal Claims**

   **A. Federal Question Jurisdiction and Warner Defendants' *Rooker-Feldman* Challenge**

   Plaintiff alleges that this Court has federal question jurisdiction over this case, pursuant to 18 U.S.C. § 1331, based on her RICO claims. Warner Defendants seek to dismiss this case based on the *Rooker-Feldman* doctrine.[4]  The *Rooker–Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Arthur v. JP Morgan Chase Bank, N.A.*, 569 F. App'x 669, 675 (11th Cir. 2014) (citing *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012)).

   As circumscribed by the Supreme Court's *Exxon Mobil Corporation. v. Saudi Basic Industries Corporation* decision ("*Exxon*"), the *Rooker-Feldman* doctrine should be "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 285 (2005); *see also Klayman v. Deluca*, No. 15-cv-80310, 2016 WL 1045851, at *6 (S.D. Fla. Mar. 16, 2016). A district court does not lack jurisdiction under the *Rooker–*

---

[4]      Although *Rooker-Feldman* applies to all types of subject matter jurisdiction (regardless of whether it is federal question, diversity, or supplemental jurisdiction), it makes sense for the Court to analyze the doctrine in the context of federal question jurisdiction, as *Rooker-Feldman* is the only jurisdictional argument raised by Defendants that is applicable to Plaintiff's *federal* claims.

*Feldman* doctrine merely "because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293.

Warner Defendants rely on an Eleventh Circuit case decided before the *Exxon* decision, (*Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000)) for the proposition that if "[a] federal claim is inextricably intertwined with a state court judgment," then the federal court is without jurisdiction over that claim. *Cf. Klayman*, 2016 WL 1045851, at *6 (juxtaposing post-*Exxon* language to that of the Eleventh Circuit's pre-*Exxon* language which barred claims under *Rooker-Feldman* if they "inextricably intertwined with a state-court judgment" that would "effectively nullify the state court judgment" or "succeed[] only to the extent that the state court wrongly decided the issues") (internal marks and citations omitted).

In support of its "inextricably intertwined" *Rooker-Feldman* argument, Warner Defendants claim that any ruling on Plaintiff's SAC would either directly affirm or contradict Judge Tegan Slaton's Order disposing of Sally's estate without disposition in the Key West Probate Proceeding. Warner Defendants claim that the correct procedure would be for Plaintiff to instead challenge the state court judgment by reopening the Key West Probate Proceeding pursuant to Florida law.

The Undersigned is not convinced by this argument. First, Plaintiff seeks **monetary damages** under her tortious interference, CRCPA, and RICO claims, which

13

stem from Defendants' allegedly fraudulent conduct. A court awarding monetary damages for independent causes of action would not nullify or reverse Judge Tegan Slaton's Order distributing Sally's safety deposit funds to Mark. *See Merice v. Wells Fargo Bank, N.A.*, No. 15-80614-CIV-MARRA, 2016 WL 1170838, at *4 (S.D. Fla. Mar. 25, 2016) ("Awarding monetary damages would not void, vacate, reverse, or otherwise modify the state-court judgment," thus the court had subject-matter jurisdiction over such claims) (internal citation omitted).

Second, Plaintiff claims that her injuries are caused by, and seek damages for, acts perpetrated by Defendants, and not by or **because of a final judgment**. *See Kohler v. Garlets*, 578 F. App'x 862, 864 (11th Cir. 2014) (holding *Rooker-Feldman* did not apply because appellant did not seek appellate review and reversal of the state court judgment); *Arthur*, 569 F. App'x at 675-76 (citing *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013) (finding that the *Rooker–Feldman* doctrine did not bar a challenge to a foreclosure in part when "the damages [] requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment")).

Essentially, like the plaintiff in *Laudien v. Caudill*, 92 F. Supp. 3d 614, 621 (E.D. Ky. 2015), Plaintiff "does not challenge the outcome of the probate proceeding; rather, her complaint is under [among other claims] the federal RICO statute[,]" thus *Rooker-Feldman* is inapplicable. (internal citations omitted). "If a federal plaintiff present[s] [an]

independent claim," then it is not a bar to the exercise of federal jurisdiction that the "same or a related question" was at issue between the parties in state court. *See Exxon*, 544 U.S. at 292–93.

While certainly some of Plaintiff's allegations *concern* the Key West Probate Proceeding, the SAC does not seek to **overturn** any state-court judgment, and the Court is not reviewing the state-court judgment's validity.

In fact, Plaintiff's entire SAC is premised on Defendants' alleged misconduct -- forging her mother's will, disposing of her property, and funneling her mother's proceeds into Forgotten Felines. Nowhere in the SAC does Plaintiff claim any injury **caused by Judge Tegan Slaton's Order itself.** Thus, *Rooker-Feldman* does not bar this Court federal question jurisdiction. Because this Court has federal question jurisdiction, I will next review the sufficiency of Plaintiff's federal claims for RICO and RICO conspiracy (Counts 2 and 3).

**B.  RICO (Count II)**

Title 18 U.S.C. § 1964(c) provides a cause of action for "[t]hose private plaintiffs who have been injured in their business or property by reason of a RICO violation." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1282 (S.D. Fla. 2003). To prove a RICO claim, a plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or

indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002); *see also* 18 U.S.C. §§ 1962 (a)-(c). The RICO statute defines "racketeering activity" as the enumerated crimes listed in 18 U.S.C. § 1961(1).

Warner Defendants challenge the RICO count based on insufficient predicate acts and Plaintiff's purported failure to establish the pattern requirement. Non-Warner Defendants challenge the RICO count by arguing that Plaintiff failed to prove gain for each defendant and that Plaintiff failed to allege facts regarding each Defendant's individual participation in the fraud.[5] I address each argument in turn, below.[6]

---

[5]      Warner Defendants also briefly argue that Plaintiff has not been injured by the alleged scheme because she has no interest in Sally's property and that her damages stem only from her emotional distress. [ECF No. 93, p. 18]. In support of this argument, Warner Defendants cite *in a footnote* [ECF No. 93, n. 75], *Echeverria v. BAC Home Loans Servicing, LP*, 523 F. App'x 675, 676-77 (11th Cir. 2013) for the proposition that the district court should dismiss a RICO claim where a plaintiff does not allege injury to her business or property (and instead alleges only personal injuries such as emotional distress). However, it is clear from the four corners of the SAC that Plaintiff alleges that she was entitled to inheriting Sally's estate, which I assume to be true for purposes of evaluating a dismissal motion. Thus, Defendants' alleged scheme -- to convert proceeds from Sally's property to Forgotten Felines and away from Plaintiff -- is a direct injury to *Plaintiff's* property. [ECF No. 86, ¶¶ 54, 86].

        Non-Warner Defendants also briefly argue, without citing any case law, that Plaintiff did not sufficiently allege that Tatgenhorst was associated with Defendants' enterprise. However, it is clear from the four corners of the SAC that Plaintiff did

i.    *Predicate Acts*

Racketeering activity includes in its definition all of the predicate acts alleged by Plaintiff: mail fraud; wire fraud; laundering of monetary instruments; retaliation against a person assisting law enforcement; and fraud and related activity in connection with identification documents. *See* 18 U.S.C. §§ 1961(1); 1341; 1343; 1956(a)(3)(B) & (7)(A); 1513(b)(2) & (e); and 1028. Plaintiff is required to sufficiently allege at least two of the asserted acts to state a RICO claim.

But "[w]hen [as here] a RICO claim is based on predicate acts involving fraud, those predicate acts must be pleaded with particularity, in accordance with [Rule 9(b)]." *Liquidation Comm'n of Banco Intercont'l, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008) (internal citations omitted). Allegations of fraud are subject to heightened pleading standards and "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). A complaint satisfies the requirements of *Twombly* and Rule

---

specifically plead that all Defendants were a part of the alleged enterprise. [ECF No. 86, ¶¶ 16, 25, 26(D)].

[6]    Defendants did not challenge (1) each Defendant's participation in the operation or management of a RICO enterprise; (2) RICO causation; (3) conduct of enterprise; (4) the rule that the person must be separate from enterprise; (5) statute of limitations; and (6) whether the crimes took place in interstate commerce. Thus, in this Order, I address only the arguments which are actually (and sufficiently) raised in the Defendants' motions and memoranda.

9(b) when it plausibly and particularly alleges the defendant's fraudulent acts. *Am.*

*Dental Ass'n*, 605 F.3d at 1291 (internal citation omitted).

Essentially, to satisfy Rule 9(b), a plaintiff must allege "(1) the precise statements,

documents, or misrepresentations made; (2) the time, place, and person responsible for

the statement; (3) the content and manner in which these statements misled the

Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross*

*& Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (internal citation

omitted). Rule 9(b) cannot be satisfied by "lumping" all "Defendants" together in

allegations of fraud. *Id.* at 1381.

However, although Non-Warner Defendants claim that under *Brooks*, Plaintiff

must allege what each Defendant gained by the fraud with specificity [ECF No. 101, p.

9], this is not the case. "Although *Brooks* does hold that the plaintiffs must identify the

*role* of each defendant, it does not state that a plaintiff must allege what *each* defendant

*gained* from the scheme, but what the defendants **gained collectively** from the scheme."

*Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276, 1283 (M.D.

Fla. 1999) (emphasis supplied).

a. **Mail and Wire Fraud (18 U.S.C. §§ 1341 & 1343)**

"Mail or wire fraud occurs when a person (1) intentionally participates in a

scheme to defraud another of money or property and (2) uses the mails or wires in

furtherance of that scheme." *Am. Dental Ass'n*, 605 F.3d at 1290–91 (internal quotation and marks omitted); *see also U.S. v. Griffin*, 699 F.2d 1102, 1105–06 (11th Cir. 1983) (noting that wire fraud can occur from an interstate telephone conversation).

"Where mail fraud is asserted as a predicate act for a civil RICO claim, a plaintiff must establish not only the statutory elements of mail fraud, but also that the defendant 'had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by [the defendant's] misrepresentations.'" *Bryan v. Countrywide Home Loans*, No. 8:08-CV-794-T-23EAJ, 2008 WL 4790660, at *3 (M.D. Fla. Oct. 27, 2008) (quoting *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003) (internal quotations omitted).

For mail fraud, it is not necessary that the mailing *itself* contain misrepresentations. It is necessary only that the mail was used to aid in the carrying out of a fraudulent scheme. *Halpin v. David*, No. 4:06CV457-RH/WCS, 2009 WL 1753759, at *10 (N.D. Fla. June 22, 2009). In *Schmuck v. United States*, 489 U.S. 705, 715 (1989), the Supreme Court of the United States specifically acknowledged "that 'innocent' mailings—ones that contain no false information—may supply the mailing element'" necessary for the crime of mail fraud. *Id.* (citing *Parr v. United States*, 363 U.S. 370, 390 (1960)). The Eleventh Circuit also applies the holding in *Schmuck* to cases involving wire fraud. *See, e.g., United States v. Phillips*, 647 F. App'x 917, 918 (11th Cir. 2016) (noting that

an email need not include any misrepresentation nor be essential to the *success* of the scheme -- the email needs to be sent only as an essential part of the scheme for a wire fraud conviction) *(citing Schmuck*, 489 U.S. at 713-14).

Here, the mailings and telephone calls alleged by Plaintiff involve Sally's estate documents and her health, which were made allegedly in furtherance of Defendants' scheme to forge Sally's estate documents, dispose of and convert her property proceeds away from Plaintiff, and funnel such funds into Forgotten Felines. Based on the holding in *Schmuck*, these allegations could be sufficient for the predicate acts of mail and wire fraud to support a RICO claim, even if Plaintiff fails to allege that there was anything fraudulent in the mailings or wires themselves. However, as explained below, Plaintiff's allegations of mail and wire fraud fail for other reasons -- they are not sufficiently pled under the heightened Rule 9(b) standard. *See Brooks*, 116 F.3d at 1380-81.

Plaintiff alleges that Nancy committed wire fraud when she "inform[ed] Plaintiff **on multiple dates in May 2011 via telephone calls**" about Sally's health and, through her forged healthcare proxy, controlled Sally's medical decisions and admittance to hospitals before she died. [ECF No. 86, ¶ 54(B)] (emphasis supplied). Plaintiff also alleges that Nancy "used the forged power of attorney to take the property of Sally Buehler, by opening Sally's safety deposit box on or near June 8, 2011 **and then**

**informing [her] via telephone calls [] on multiple dates thereafter** that nothing was in said box." [ECF No. 86, ¶ 54(C)] (emphasis supplied).

Plaintiff alleges that Nancy intentionally defrauded her when she called her in **May 2011** regarding her ability to make medical decisions on her mother's behalf and through other phone calls at **some unspecified time** after June 8, 2011, when she claims that nothing was in her mother's safety box. But Plaintiff does not allege the time and the place each statement was made, what Nancy's exact statements were, and how such statements were made as an essential part of the scheme.

Plaintiff next alleges that Warner Defendants committed mail fraud by emailing or mailing Plaintiff, on June 9, 2011, a copy of the forged will, and on June 14, 2011, mailing Plaintiff notice that Sally's will was now deposited with the clerk of court in Monroe County, Florida**.** [ECF No. 86, ¶¶ 44-45, 54 (D), 85]. Based on these statements, it is unclear how or when the mailings were sent to Plaintiff. For example, in paragraph 44 of the SAC, Plaintiff claims that Nancy emailed Plaintiff a copy of the forged will but in paragraph 85, she claims that she was notified of the mail fraud through the U.S. postal service. It is further unclear how each Warner Defendant participated in the alleged mail fraud. Plaintiff fails to attach any of the cited emails/letters to the SAC so it is impossible for the Court to determine the precise statements made and who was responsible for each statement.

21

Plaintiff then generally alleges that all Defendants committed mail and wire fraud on June 6th and 9th of 2011 by informing her that Sally had executed a will before she died and then sending her the allegedly forged will. [ECF No. 86, ¶ 82]. Are these acts of mail and wire fraud different than the emails she alleges Nancy sent on June 6th and 9th of 2011 in paragraphs 43 and 44 of the SAC? The Undersigned cannot tell Defendants' exact statements, let alone whether the acts occurred through the mail or wires. In addition, Plaintiff's allegations for mail and wire fraud are improperly lumped together for all Defendants, and I therefore cannot decipher each Defendant's alleged involvement.

Plaintiff also alleges that Richard and the Law Firm committed mail and wire fraud by unlawfully transferring monies received from its victim-clients but she fails to allege what property was transferred. [ECF No. 86, ¶ 57].  For Sally specifically, Plaintiff fails to state **any** amount of proceeds from Sally's estate that was transferred from one location to another location, such as a transfer to a specific bank, into a specific account on a specific day. For the purposes of an alleging a RICO claim, Plaintiff's conclusory statement is insufficient to establish Richard's and the Law Firm's actions as the predicate acts of mail and wire fraud.

Plaintiff alleges that all Defendants claim to have other instruments permitting them to make decisions on behalf of Sally but have never produced them to Plaintiff.

22

[ECF No. 86, ¶ 82]. Is she referring to Nancy's personal representative and healthcare proxy documents? Is she referring to another document? Were such statements made over the phone or through the mail? These questions are unanswered, leaving an unduly vague assortment of nebulous allegations. As a result, such sprawling, conclusory allegations do not meet the heightened standard for pleading mail and wire fraud under Rule 9(b). *Brooks*, 116 F.3d at 1381.

### b.  Laundering of Monetary Instruments

Title 18 U.S.C. § 1956(a)(3)(B) states that

> [w]hoever, with the intent -- to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of **specified unlawful activity**; or conducts or attempts to conduct a financial transaction involving property **represented** to be the proceeds of **specified unlawful activity,** or property used to conduct or facilitate **specified unlawful activity**, shall be fined under this title or imprisoned for not more than 20 years, or both.

18 U.S.C. § 1956(a)(3)(B)(emphasis supplied).

The term "specified unlawful activity" is defined in § 1956(c)(7) and encompasses a considerable number of federal crimes, including most of the crimes listed in 18 U.S.C. § 1961(1), an enumeration of the predicate acts under RICO. *Zigman v. Giacobbe*, 944 F. Supp. 147, 156–57 (E.D.N.Y. 1996).

Money laundering allegations underlying a civil RICO claim need not satisfy the heightened particularity standard in Rule 9(b), unless the specified unlawful activity

alleged is in fact crimes subject to the heightened particularity standard. *Compare Liquidation Comm'n of Banco Intercont'l, S.A.*, 530 F.3d at 1355–56 (holding that "RICO predicate acts not sounding in fraud need not necessarily be pleaded with particularity"); *with Advanced Optics Elecs., Inc. v. Robins*, 633 F. Supp. 2d 1237, 1254 (D.N.M. 2008) ("Moreover, if wire fraud were the underlying offense [for a money laundering crime], then rule 9(b) would apply, requiring particularity in the pleadings regarding the fraud.").

Plaintiff claims that Defendants violated the federal money laundering statute because (1) Richard and the Law Firm falsely drafted the will, the power of attorney, and healthcare proxy document; (2) Tatgenhorst falsely witnessed the will; (3) Steadman falsely notarized the will; (4) Forgotten Felines was falsely named the beneficiary of Sally's will and received her property; (5) Warner Defendants and Tatgenhorst refused to produce copies or originals of the healthcare proxy and power of attorney for Sally; and (6) Richard and the Law Firm unlawfully transferred monies received from the assets of its victim clients. [ECF No. 86, ¶¶ 54(A) & (E), 56-57].

Essentially, Plaintiff claims that Defendants conducted the unlawful financial transaction of improperly transferring Sally's proceeds from her estate, forging Sally's estate documents, and naming Forgotten Felines as the beneficiary of Sally's will.

What is most problematic to Plaintiff's allegations that money laundering constitutes a predicate act under RICO is that she fails to sufficiently allege that any proceeds or property Defendants took are from a "specified unlawful activity," which is required to sufficiently allege a crime for money laundering. *Zigman*, 944 F. Supp. at 157; *see also Advanced Optics Elecs.*, 633 F. Supp. 2d at 1254 (noting that this definition under the money laundering statute "does not involve all transactions in criminally derived property" rather "[t]he property must be derived from 'specified unlawful activity[,]'" as "defined in 18 U.S.C. § 1956(c)(7).").

Plaintiff does not specify which offense among the many listed in 18 U.S.C. § 1956(c)(7) she is relying on for Defendants' acts to qualify as "specified unlawful activity," and the Court does not see any definite candidates.  Rather, she just generally cites § 1956(c)(7)(a) as her basis. Section 1956(c)(7)(a) enumerates the crimes qualifying under 18 U.S.C. § 1961(1) as  predicate acts under RICO, as also qualifying as specified unlawful activity under the money laundering statute. As stated above, Plaintiff has not sufficiently pled the predicate acts of wire and mail fraud. As stated below, she has not adequately pled the predicate acts of retaliation against a person assisting law enforcement, and fraud and related activity in connection with identification documents.

As a result, Plaintiff has recited only a bare conclusion that Defendants laundered funds. Plaintiff has not pled facts that could establish a money laundering violation pursuant to 18 U.S.C. § 1956 nor identified proceeds from any "specified unlawful activity." Plaintiff somehow wants the Court to accept that Sally's property was obtained by fraud. However, the Court cannot sidestep the statutory requirements under both the RICO and money laundering statutes and simply accept this conclusory allegation. *See Christensen v. Smith*, No. 2:14-CV-00784-CW-DBP, 2016 WL 3360420, at *2 (D. Utah Mar. 21, 2016), report and recommendation adopted, No. 2:14-CV-00784-CW-DBP, 2016 WL 3365401 (D. Utah June 16, 2016) ("Presumably, Plaintiff intends to show that funds were obtained through fraud, but he has not pled fraud with the requisite particularity. This is fatal to the fraud claim and to money laundering predicated upon such fraud.") (internal citations omitted).

What is also missing from Plaintiff's SAC to satisfy a money laundering predicate is any allegation that Defendants intended to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of a specified unlawful activity. To the contrary, since June 9th of 2011, Plaintiff had **actual notice** of the forged will because she alleges that Nancy sent her a copy via email (or mail) and that Warner Defendants mailed her proof that the will was deposited on June 14, 2011. [ECF No. 86, ¶¶ 44, 85]. Furthermore, there are no allegations that law

26

enforcement represented to Defendants that administrating Sally's estate was in and of itself an unlawful activity. As a result, Plaintiff has failed to adequately allege the predicate act of money laundering.

### c.  Retaliation Against a Victim or Informant

Retaliation against a witness, victim or informant is actionable pursuant to 18 U.S.C. § 1513(e) if someone "knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense." 18 U.S.C. § 1513(e).

Retaliation is also actionable under 18 U.S.C. 1513(b)(2)  if someone "knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for -- any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer[.]" 18 U.S.C. § 1513(b)(2).

For this predicate act, Plaintiff alleges that she reported Richard's and Nancy's actions in 2012 to local law enforcement and the FBI and, as a result, Richard and Nancy

attempted "to intimidate Plaintiff into submissive acceptance of said losses by threatening through third persons violence to Plaintiff and by directly threatening Plaintiff with criminal prosecution and lawsuits." [ECF No. 86, ¶ 54 (G)].

Plaintiff further alleges that Joseph Ardolino, a person who Plaintiff claims in the SAC is a **victim** of Defendants' scheme, told Plaintiff over the phone to stop causing problems for Warner Defendants or "face the consequences." [ECF No. 86, ¶¶ 30 (C)(3), 51-53, 54(G)]. She also alleges that all Defendants knowingly attempted to retaliate against Plaintiff for informing law enforcement of possible federal law violations they committed. [ECF No. 86, ¶ 83].

Plaintiff has not sufficiently pled retaliation. The Undersigned is unsure of when Mr. Ardolino's alleged threat occurred, how he found out about Plaintiff contacting law enforcement about Defendants, whether such threat actually interfered with the information or assistance that she provided to law enforcement and whether Mr. Ardolino was acting at Defendants' instruction.

What is also missing from Plaintiff's SAC is a **connection** between Defendants and Mr. Ardolino. Is Mr. Ardolino part of the RICO scheme? Did the Defendants tell him to threaten Plaintiff on their behalf? There is no causal connection between Defendants and the threat from Mr. Ardolino. Thus, this retaliation predicate act is also insufficient to support Plaintiff's RICO claim. *See Rock v. Bae Sys., Inc.*, No. 6:12-cv-1092-

Orl-37GJK, at *2, 2013 WL 1091683 (M.D. Fla. Mar. 15, 2013) (dismissing plaintiff's §

1512(d) RICO claim because plaintiff failed to adequately allege that the individuals

who engaged in the proffered acts were agents of the defendants).

Furthermore, as to Defendants' alleged direct threats against Plaintiff regarding

criminal prosecution and lawsuits, Plaintiff omits any specific references to these

threats, and they are too vague and detail-free to be considered by the Undersigned.

### d. Fraud and Related Activity in Connection with Identification Documents (18 U.S.C. § 1028(a)(7))

Title 18 U.S.C. § 1028(a)(7) "makes it an indictable offense to knowingly use a

'means of identification of another person' without lawful authority and 'in connection

with, any unlawful activity that constitutes . . . a felony under any applicable State or

local law.'" *Georgian v. Zodiac Grp., Inc.*, No. 10-CIV-60037, 2011 WL 3349573, at *12 (S.D.

Fla. Aug. 3, 2011) (quoting 18 U.S.C. § 1028 (a)(7)). Because this predicate act involves

fraud, the heightened pleading standard of Rule 9(b) applies.

Plaintiff alleges that the Warner Defendants "knowingly used, or aided and

abetted the use thereof, without lawful authority and contrary to Florida law, an

identification instrument of Sally Buehler in producing a health care proxy and or

durable power of authority which was a product of undue influence, fraud, or

suspected forgery[.]" [ECF No. 86, ¶ 84].

29

Plaintiff has not alleged *which* identification document Warner Defendants used and *when* they used such document. Plaintiff has not stated each Defendant's involvement in the fraud. Plaintiff also did not allege any facts that show that Warner Defendants did not have authority to use Sally's identification instrument to produce the health care proxy and power of attorney documents. As a result, this predicate act also fails for lack of specificity.

ii.   *Conclusion as to RICO*

Because Plaintiff's SAC does not sufficiently state **any** predicate acts and she is required to allege at least *two* predicate acts, Plaintiff has failed to state a cause of action for RICO. Thus, the Undersigned need not address Warner Defendants' additional argument as to lack of pattern. The Undersigned therefore grants Defendants' motions to dismiss as to RICO (Count 2) **without prejudice** (at this time, subject to additional considerations).[7]

---

[7]   In an earlier Order [ECF No. 78], the Court granted Plaintiff's motion to add defendants and to file a second amended complaint. However, the Order also included a caveat: "pursuant to Rule 15, the Undersigned **grants the motion in part** and gives leave to Plaintiff to amend her complaint this last time. However, absent compelling circumstances and/or a Court Order, the Court will not allow Plaintiff to amend the complaint further." [ECF No. 78, p. 2]. If Plaintiff seeks to reassert this count and the other counts dismissed without prejudice, then she must file a motion seeking leave to amend within 14 calendar days of this Order. If Plaintiff seeks leave, then she shall attach the proposed Third Amended Complaint to her motion. And if she wants to refile a federal civil RICO or RICO conspiracy claim, then she will need to also file a RICO Case Statement. More on this requirement later.

## C.  Conspiracy to Violate RICO (Count III)

In Count III, Plaintiff alleges a RICO conspiracy claim against all Defendants. "Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c) [.]" *Am. Dental*, 605 F.3d at 1293 (citing 18 U.S.C. § 1962(d)).

Agreement to participate in a RICO conspiracy, however, can be proved in either one of two ways: (1) by showing an "agreement on an overall objective," or (2) in the absence of an agreement on an overall objective, by showing that a defendant agreed personally to commit two predicate acts and therefore to participate in a "single objective" conspiracy. *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992) (internal citation omitted).

Although a defendant may be liable for RICO conspiracy even if he is not liable for the substantive RICO offense, a RICO plaintiff must still allege an illegal agreement to violate a substantive provision of RICO. *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004).  Otherwise, the allegations in the complaint do no more than allege that the defendants conspired to commit conduct that does not violate RICO.  *Id.*

Consequently, a "conspiracy itself furnishes no cause of action.  The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed.  If the underlying cause of action is not viable, the conspiracy claim must also fail." *Spain*

31

*v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1311 (11th Cir. 2000) (internal quotation omitted).

As explained above, the underlying substantive RICO cause of action is not viable as pled because Plaintiff has not adequately alleged two predicate acts. Nor does the SAC contain additional allegations of conspiracy to violate RICO that go beyond the acts alleged for the § 1962(c) claim. Consequently, to the extent that the SAC alleges an agreement between Defendants, it is an agreement to do something other than violate RICO. *See Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326, 1342 (S.D. Fla. 2008) ("Super does not allege new allegations in its count for RICO conspiracy, but instead relies on the same facts it alleged for the RICO claims under § 1962(a) and § 1962(c). Because I concluded that Plaintiff had failed to state a claim for civil RICO under § 1962(c) or § 1962(a), Plaintiff Super's RICO conspiracy claim necessarily fails.") (citing *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007)). Thus, the RICO conspiracy claim should therefore be **dismissed without prejudice**. *See supra* footnote 7.

<u>**Analysis of State Claims**</u>

Plaintiff's remaining claims are state law claims: tortious interference with inheritance against all Defendants (Count 1); violation of CRCPA against all Defendants

(Count 4); violation of FDUTPA against the Law Firm and Richard (Count 5); and constructive trust against Warner Defendants (Count 6).

Because this Court no longer has federal question jurisdiction with the dismissal of the RICO counts, the Undersigned must next determine if the Court has diversity jurisdiction over the state law claims. Defendants challenge this court's diversity jurisdiction over the state law claims by asserting that Plaintiff has not met the amount in controversy. Warner Defendants also argue that the probate exception to diversity jurisdiction is applicable here. Before getting to the merits of the state law claims, I first address Defendants' jurisdictional challenges.

### A. Jurisdictional Challenge as to Amount in Controversy

Original jurisdiction may be premised on diversity of citizenship where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, currently $75,000.00 (excluding interest or costs). 28 U.S.C. § 1332. In this case, Defendants do not dispute diversity of citizenship but argue that Plaintiff has not met her burden of establishing the requisite minimum amount in controversy.

Warner Defendants claim that, based on the filings in the Key West Probate Proceeding, the amount in controversy is considerably less than Plaintiff's allegation in the SAC that it exceeds $75,000.00. [ECF Nos. 86, p. 2; 93, p. 20]. To support this

assertion, Warner Defendants attach Judge Tegan Slanton's Order distributing personal property without administration, which shows that Mark was awarded $5,000 from Sally's Safe Deposit Box held by Capital Bank. [ECF No. 93-2]. Plaintiff opposes this argument by attaching a verification to her response to Warner Defendants' motion to dismiss, where she lists certain known assets of Sally, totaling $94,800. [ECF No. 96-2]. [8]

---

[8]     Even though all parties mention Plaintiff's *former* affidavit, which includes her sworn statement and verified version of the property included in Sally's estate, [ECF No. 74-1], and this was attached to her response to Warner Defendants' motion to dismiss the **Amended Complaint** [ECF Nos. 66; 70; 74], the Court cannot consider such filing.  As a matter of law, "[a]n amended pleading **supersedes** the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (emphasis added) (quoting *Proctor & Gamble Defense Corp. v. Bean*, 146 F.2d 598, 601 n. 7 (5th Cir. 1945)); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (ruling that a district court cannot consider exhibits from a prior complaint when evaluating a dismissal motion). This submission was not attached to the SAC or to Plaintiff's response to the motions to dismiss the SAC.

    However, Plaintiff *did* submit a verified version of the property list of Sally's estate by attaching it to her response to Warner Defendants' motion to dismiss the SAC, even though this submission did not include the affidavit that was attached her prior response. [ECF No. 96-2]. This submission, which is properly before the Court, includes Plaintiff's unsworn verification, a statutory substitute for a more-traditional affidavit. Because we are in federal court, Plaintiff should have filed her verification in compliance with 28 U.S.C. § 1746. However, Plaintiff's verification purports to rely on Florida Statute § 92.525. Because the federal and state statutes both authorize verified declarations as substitutes for affidavits and both require strikingly similar language in the declaration, the Undersigned does not consider this procedural gaffe (i.e., misstating the applicable statute) to be legally significant. It is therefore insufficient to cause me to reject Plaintiff's submission. Instead, I am permitted to evaluate the current verification [ECF No. 96-2] as an affidavit.

34

In cases where the amount in controversy in uncontested, "[a] plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938)). However, in cases where a plaintiff files suits in federal court and defendant contests the amount in controversy, the defendant bears the burden to prove that it is a "'*legal certainty'* that plaintiff's claim is actually for less than the jurisdictional amount." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1094 (11th Cir. 1994) (citing *St. Paul's Indem. Co.,* 303 U.S. 283 at 288-89) (emphasis supplied); *see also* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* 246, 281-83 (4th ed. 2011) ("The legal certainty concept appears equivalent to a conclusion that as a matter of law, the jurisdictional amount cannot be recovered or, stated differently, no reasonable jury could award that amount.").

However, where jurisdiction is based on indeterminate damages, the "legal certainty" test gives way and the party seeking to invoke the court's diversity jurisdiction (in cases where plaintiff files suit in federal court, the plaintiff) bears the burden of proving by a preponderance of the evidence that the claim on which federal

jurisdiction is based meets the jurisdictional amount. *Federated Mut. Ins. Co.*, 329 F.3d at 807 (internal citation omitted).[9]

In determining the amount in controversy, the Court looks to the amount stated on the face of the complaint. *Mulia, Inc. v. Seaboard Warehouse Terminals, Inc.*, No. 08-20454-CIV, 2008 WL 1836372, at *4 (S.D. Fla. Apr. 23, 2008).  Furthermore, even if the underlying complaint does not claim a specific amount of damages, then it may be "facially apparent" from the pleading itself that the amount in controversy satisfies the jurisdictional requirement. *Co. Prop. & Cas. Ins. Co. v. Metal Roofing Sys.*, No. 13-60659-CIV, 2013 WL 5770730, at *3 (S.D. Fla. Oct. 24, 2013) (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010)). Ultimately, federal judges have discretion to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether jurisdiction is proper. *Roe*, 613 F.3d at 1062-63

---

[9]     The Undersigned notes that although the Eleventh Circuit Court of Appeals in *Federated Mutual Insurance Company* applied the burden-shifting standards in a case where a plaintiff filed suit in federal court and the amount in controversy was contested, it relied on case law discussing contested amounts in controversy in the *removal* context.  329 F.3d 807 n. 1 (11th Cir. 2003); *see, e.g., St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("Although most of our caselaw regarding § 1332's amount in controversy requirement has arisen in the context of removal from state to federal court, we find the procedures developed in those cases to be instructive[.]"). Based on this Eleventh Circuit precedent of applying amount in controversy removal standards to cases where a plaintiff initially files suit in federal court, the Undersigned will also use that approach in analyzing whether the amount in controversy is sufficient here.

(quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d at 755 (11th Cir. 2010)) (internal quotation marks omitted).

In this case, Plaintiff alleges both determinate damages (the certain amounts included in Plaintiff's verification) and indeterminate damages (such as the consequential damages of emotional distress), which, as I previously explained, involve different burdens of proof. For the determinate damages, the legal certainty standard applies for Defendants to contest jurisdiction. However, for Plaintiff's indeterminate damages, it is Plaintiff's burden to prove by the preponderance of the evidence that her damages amount to at least $75,000.00. Although Plaintiff's emotional distress damages are inherently indeterminate, Plaintiff's additional claims for damages, such as the treble damages under CRCPA, are more concrete because they are based on a specific inventory of property values as included in Plaintiff's verification [ECF No. 96-2].

Therefore, the next question posed for the Undersigned is whether I can consider Plaintiff's verification as record evidence as to Plaintiff's determinate damages, thus obviating the need for the burden to shift to Plaintiff to prove that her indeterminate emotional distress damages meet the jurisdictional required amount. The Eleventh Circuit has explained that courts are permitted to consider evidence, such as affidavits, declarations, and documentation, regarding the amount in controversy if the complaint does not allege a specific amount of damages. *Pretka*, 608 F.3d at 754-55. Because

Plaintiff has not alleged a specific amount of damages in her SAC, I will indeed examine her verification. As a result, I find that Defendants have the exclusive burden to prove that it is a legal certainty that Plaintiff cannot meet the jurisdictional amount.

Non-Warner Defendants claim that even if the Court were to consider the amounts alleged in Plaintiff's verification [ECF No. 96-2], which I can do pursuant to *Pretka*, 608 F.3d at 755, and the will is invalidated as a forgery, then Florida's intestacy statute would apply (Florida Statute § 732.102(1)). [ECF No. 101, p. 5]. Thus, under intestacy, Non-Warner Defendants argue, Plaintiff would need to split her mother's proceeds with her siblings, leaving her only a $31,600 intestate share.

The Undersigned is not convinced by this argument because Plaintiff's determinate damages are based on injuries from Defendants' alleged conduct of dissipating assets from Sally's estate both before and after the will was deposited, which amount to wrongs that occurred **outside** the Key West Probate Proceeding.

If I were to accept Non-Warner Defendants' argument (i.e., that this Court must make a determination invalidating a will, which would interfere with the Key West Probate Proceeding, and cause the estate to be distributed through intestacy), then clearly the amount in controversy would not be the Court's only problem, as Warner Defendants' other arguments regarding *Rooker-Feldman* and the probate exception would apply. However, this is not the case, and the Undersigned finds that Plaintiff

could prevail on her claims and a jury could award her damages, unrestricted by Florida probate law.

Furthermore, Non-Warner Defendants do not consider Plaintiff's additional claims for damages in the SAC: emotional distress (tortious interference with inheritance - Count 1); treble damages (CRCPA - Count 4); and attorneys' fees (CRCPA - Count 4); and attorneys' fees (FDUTPA - Count 5). Plaintiff also requests that the Court consider the possibility of punitive damages in her opposition response to Warner Defendants' dismissal motion and arguments concerning amount in controversy.[10]  [ECF No. 96, pp. 15-17].

Thus, the next question posed for the Court is whether I may consider treble damages, attorneys' fees, and emotional distress damages when assessing the amount in controversy.  For such answers, we must look to Florida law. *Broughton v. Fla. Intern. Underwriters, Inc.*, 139 F.3d 861, 863 (11th Cir. 1998) ("The determination of whether the requisite amount in controversy exists is a federal question; however, [s]tate law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce.") (internal citations omitted); *Lindsay v. Am. Gen. Life & Accident Ins. Co.*, 133 F. Supp. 2d 1271, 1277 (N.D. Ala. 2001) ("This includes applying

---

[10]     The Undersigned will not consider the possibility of punitive damages for the amount in controversy determination because Plaintiff does not cite to specific Florida law entitling her to such recovery, rendering this claim far too speculative.

state law rules regarding the applicable measure of damages and the availability of special and punitive damages.") (internal citations omitted).

FDUTPA gives a court discretion to award attorney's fees to the prevailing party. Fla. Stat. § 501.2105; *Victory Int'l (USA), LLC v. Perry Ellis Intern., Inc.*, 08–20395–CIV, 2009 WL 1956236, at *1 (S.D. Fla. July 7, 2009). Thus, the Court can consider attorneys' fees alleged under FDUTPA when assessing the amount in controversy. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy.") (internal citations omitted).

However, under CRCPA, attorneys' fees are not considered for purposes of determining the amount in controversy, as they are considered **costs** under Florida law. *HansaWorld USA, Inc. v. Davenport*, No. 12-24510-CIV, 2013 WL 12094845, at *3 (S.D. Fla. Jan. 25, 2013) ("As Florida Statute section 772.104, the statute under which attorney's fees would be available, is 'under' chapter 772, the Court will not consider potential attorney's fees to satisfy the jurisdictional amount" because "Florida Statute section 772.185 states, 'Attorney's fees awarded under this chapter shall be taxed as costs'"); *see also Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.*, 629 F. Supp. 1030, 1033 (M.D. Ga. 1986) ("A claim for attorney's fees cannot be used to satisfy the jurisdictional amount

because attorney's fees are 'costs' within the meaning of the section.") (internal citation omitted).

However, courts may consider treble damages under CRCPA for the amount in controversy determination. *See HansaWorld USA, Inc.*, 2013 WL 12094845, at *3 (noting that treble damages under CRCPA are considered for amount in controversy purposes).

Furthermore, courts in this district have considered emotional distress damages in determining the amount in controversy. *See Love v. N. Tool & Equip. Co., Inc.*, No. 08-20453-CIV, 2008 WL 2955124, at *5 (S.D. Fla. Aug. 1, 2008) (citing *Brown v. Cunnigham Lindsey U.S. Inc.*, No. 305CV141J32HTS, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005) (concluding that plaintiff's emotional distress and punitive damages further increased the amount in controversy); *Barnes v. JetBlue Airways Corp.*, No. 07-60441, 2007 WL 1362504, at *2 (S.D. Fla. May 7, 2007) (concluding that an award for emotional distress could easily match an award for economic damages).

Because the court can consider the amounts claimed in Plaintiff's verification, Plaintiff's allegations for attorneys' fees under FDUTPA,[11] treble damages under

---

[11]     However, as this Order will explain, I can ultimately consider only emotional distress under the tortious interference with inheritance claim (Count 1) and treble damages under CRCPA (Count 4) for the amount in controversy determination because I am dismissing Plaintiff's FDUTPA claim (Count 5) with prejudice. Thus, I cannot consider the attorney's fees under that statute. But the tortious interference damages and the treble damages under CRCPA are sufficient by themselves to get Plaintiff over the $75,000.00 hump.

CRCPA, and emotional distress under tortious interference with her inheritance claim, the Undersigned finds that Defendants have not met their burden to prove that it is a legal certainty that Plaintiff cannot satisfy the amount in controversy. Thus, this Court has diversity jurisdiction over this action.

### B. Probate Exception

Warner Defendants claim that Plaintiff's claims are barred by the "probate exception" to federal diversity jurisdiction. That exception precludes federal courts from endeavoring to dispose of property in the custody of a state probate court. They cite *Marshall v. Marshall*, 547 U.S. 293, 298-99 (2006), and *Markham v. Allen*, 326 U.S. 490, 494 (1946), in support of this jurisdictional argument to bar Plaintiff's claims.

Essentially, Warner Defendants claim that this lawsuit involves a probate matter, a proceeding *in rem* in nature, where the dispute concerns property or a person in the court's control. *Sarhan v. Rothenberg*, No. 07-22818-CIV-LENARD, 2008 WL 2474645, at *9 (S.D. Fla. June 17, 2008) ("[A] court other than the one that controls the *res* . . . should not exercise jurisdiction and meddle in that dispute.") (citing *Marshall*, 547 U.S. at 311).

Plaintiff claims that the probate exception does not apply because this action does not involve administrating an estate, probating a will or determining the validity of a will, as she is suing Defendants for damages caused to her property and her

interests. Warner Defendants disagree and claim that Plaintiff's damages are directly connected to Sally's intent, Plaintiff's entitlement to property (versus her siblings' interests), and the determination of whether Sally's will was in fact forged.

The Undersigned disagrees with Warner Defendants' arguments because as long as Plaintiff's action "does not challenge the validity of the will or trust, or the validity of the probate proceeding, then the probate exception does not apply to curtail the federal court's jurisdiction to adjudicate a claim between parties." *Freeman v. U.S. Bank, N.A.*, No. 8:13-CV-338-T-26MAP, 2013 WL 2147558, at *1 (M.D. Fla. May 16, 2013).

In fact, as Plaintiff correctly points out in her response, the probate exception to diversity jurisdiction is narrowly applied in the Eleventh Circuit. In *Michigan Tech Fund v. Century National Bank of Broward*, 680 F.2d 736, 738-39 (11th Cir. 1982), the Eleventh Circuit permitted the district court to entertain an action *against* the decedent's estate when the lawsuit sought a declaration that the decedent's will conveyed certain assets to the plaintiffs, notwithstanding the pending probate proceedings. In *Michigan Tech Fund*, even though resolution of the claims against the estate required the federal district court to interpret the will, the Eleventh Circuit determined that this was insufficient to divest the court of diversity jurisdiction. *Id.* at 742-43; *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 673 (11th Cir. 1991) *abrogated on other grounds by Saxton*

*v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001) ("This circuit has narrowly construed the probate exception.").

Here, Plaintiff's claims do not ask this Court to undo what the probate court has already done and meddle with the distribution of Sally's *res*. In fact, as *Michigan Tech Fund* provides, the Undersigned is permitted to evaluate whether Sally's will was forged to evaluate the sufficiency of Plaintiff's claims, as long as the Undersigned does not make determinations invalidating it.

Determining whether Plaintiff is entitled to damages under her claims for tortious interference with inheritance and CRCPA or declaratory relief under FDUTPA are decisions which would not touch Sally's *res*. Thus, I find that such claims are outside the Key West Probate Proceeding.

In addition, if the Undersigned considers the Law Firm's handing of the Joan Temple Estate, the Harold and Elizabeth Guppy Estates, the Carolyn Wilson-Garrison Estate, and the Ardolino Estate to evaluate the element of pattern under CRCPA, then this assessment will not affect each estate's state probate proceedings. These individuals are not parties to this action. Therefore, the Court has no jurisdiction to even opine on the validity of their probate proceedings, let alone "mount a collateral attack on them," as the Warner Defendants claim. [ECF No. 93, p. 6].

However, the Undersigned agrees that Plaintiff's constructive trust claim (Count 6) *does* seek relief from the Court that will affect the *res* of the Key West Probate Proceeding, as Plaintiff seeks an imposition of a constructive trust for all property fraudulently taken by Warner Defendants (which includes the property already granted to Mark by court order, i.e., the safe deposit funds). Therefore, the probate exception applies here, and this count is therefore **dismissed with prejudice.**

Because the Court has now determined that diversity jurisdiction over Plaintiff's remaining state law claims exists, I will now consider whether each count is sufficiently stated to survive Defendants' motions to dismiss.

### C.  Tortious Interference with Inheritance (Count 1)

To state a claim for tortious interference with expectation of inheritance under Florida law, "a plaintiff must allege: (1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages." *Conseco Ins. Co. v. Clark*, No. 8:06CV462 T30EAJ, 2006 WL 2024401, at *5 (M.D. Fla. July 17, 2006) (citing *Whalen v. Prosser,* 719 So. 2d 2, 5 (Fla. 2d DCA 1998) (citing *Davison v. Feuerherd,* 391 So. 2d 799, 801 (Fla. 2d DCA 1980)).

"Interference with an expectancy is an unusual tort because the beneficiary is authorized to sue to recover damages primarily to protect the testator's interest rather than the disappointed beneficiary's expectations. The fraud, duress, undue influence, or

other independent tortious conduct required for this tort is directed at the testator. The beneficiary is not directly defrauded or unduly influenced; the testator is." *Schilling v. Herrera*, 952 So. 2d 1231, 1234 (Fla. 3d DCA 2007) (quoting *Whalen*, 719 So. 2d at 6).

Here, Plaintiff has alleged that she had a clear expectancy as a named or intended beneficiary of her mother's will. [ECF No. 86, ¶ 62]. The intentional interference with the expectancy that Plaintiff alleges, which the Court must at this point assume as true, is that Defendants acted tortuously against Sally (1) by acting as her power of attorney against her wishes; (2) by dissipating, during the last year of Sally's life, Sally's property (which Plaintiff was supposed to inherit, such as heirloom furniture, antiques, sentimental items, cash and jewelry); (3) by forging Sally's will when she was gravely ill; and (4) by disposing of the remainder of Sally's property in a dumpster, after the will was deposited. [ECF No. 86, ¶¶ 61-71].

Essentially, Plaintiff contends that Defendants intentionally interfered with Plaintiff's expectancy of inheritance by somehow convincing Sally, while she was ill and completely dependent on Nancy, her healthcare proxy, to grant her power of attorney and convinced her to execute a new will naming Forgotten Felines as the main beneficiary. Based on Defendants' fraudulent actions, Plaintiff was prevented from inheriting any of Sally's estate. Plaintiff alleges that she is damaged by the dissipation of items and the purportedly valid will not being administered because she lost funds,

46

assets, and profits and suffers from emotional distress. Based on these well-pled allegations, the SAC states a cause of action for intentional interference with expectancy of inheritance.

### D. Violation of CRCPA against all Defendants (Count 4)

Plaintiff seeks relief against all Defendants under CRCPA or Florida Statute § 772.101. Section 772.104(1) provides a civil cause of action for "[a]ny person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of § 772.103."[12] Fla. Stat. § 772.104(1).

---

[12]     Under CRCPA, it is unlawful for any person:

(1) Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of **criminal activity** or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2) Through a pattern of **criminal activity** or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of **criminal activity** or the collection of an unlawful debt.

(4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

The Eleventh Circuit has explained that interpretation of Florida's RICO law "is informed by case law interpreting the federal RICO statute . . . on which Chapter 772 is patterned." *Jackson*, 372 F.3d at 1263–64 (quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (internal citation omitted)). Because "Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act[,]" *Fla. Software Sys., Inc.*, 46 F. Supp. 2d at 1284, the analysis I applied to Plaintiff's federal RICO claims is equally applicable to her state RICO claim. As a result, Defendants' motions to dismiss reassert the same arguments against Plaintiff's CRCPA claim as they did for her RICO claims, challenging Plaintiff's allegations as to criminal activity, the Florida statute's term for predicate acts, and pattern.

i.    *Criminal Activity*

Despite Defendants' assertions to the contrary, Plaintiff's CRCPA claim does not *automatically* fail just because her RICO claim did. Even though CRCPA is modeled after RICO, there are some distinctions between the state and federal law, such as the definition of pattern, which I will address below. Thus, the Undersigned cannot summarily conclude that CRCPA fails. Instead, additional analysis to determine the sufficiency of this claim is required.

---

Fla. Stat. § 772.103 (1)-(4) (emphasis supplied).

Section 772.102(4) states that:

"Pattern of criminal activity" means engaging in **at least two incidents of criminal activity** that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity.

Fla. Stat. § 772.102 (4) (emphasis supplied).

CRCPA lists the enumerated crimes that qualify as criminal activity in § 772.102(1)(a). Section 772.102(1)(b) includes as criminal activity "[a]ny conduct which is subject to indictment or information as a criminal offense and listed in 18 U.S.C. § 1961(1)(A), (B), (C), or (D)." Thus, any predicate act under RICO qualifies as criminal activity under CRCPA.  Plaintiff reasserts the federal acts of wire and mail fraud and also money laundering as predicate acts under CRCPA, but based on this Court's previous analysis, these acts are insufficient.

But Plaintiff *also* alleges as incidents of criminal activity Florida Statutes §§ 817 ("Fraudulent Practices"), 825.103 ("Exploitation of an Elderly Person or Disabled Adult); 831.01 ("Forgery"), and 831.02 ("Uttering Forged Instruments"). [ECF No. 86, ¶ 54(A)-(D)].  The Undersigned will address the sufficiency of each alleged crime (i.e., "criminal activity") in turn.

The only Florida crime that does not qualify as criminal activity under § 772.102(1)(a) is § 825.103, as this crime is not listed under the statute. Furthermore, the

Undersigned finds that Plaintiff's general allegations as to Chapter 817 are insufficient. This chapter includes crimes ranging from "obtaining property by false personation" to "fraudulent use of credit cards." As a result, Plaintiff's broad, all-encompassing allegations as to Chapter 817 are far too vague for the Undersigned to evaluate.

The last two crimes alleged under CRCPA are the crimes of forgery and uttering forged instruments. Pursuant to Florida Statute § 831.01, "forgery" is defined as: [w]hoever falsely makes, alters, forges or counterfeits a public record or  . . . will, . . . [or] letter of attorney, . . . with intent to injure or defraud any person, shall be guilty of a felony of the third degree[.]" Fla. Stat. § 831.01. The crime of forgery requires the making of a writing that falsely purports to be the writing of another, with the intent to defraud. *Walters v. State,* 245 So. 2d 907, 908 (Fla. 1st DCA 1971); *see also Rushing v. State,* 684 So. 2d 856, 857 (Fla. 5th DCA 1996).

Section 831.02 states that "[w]hoever utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in § 831.01 [such as a will] knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be guilty of a felony of the third degree." Fla. Stat. § 831.02.

Plaintiff adequately alleges each Defendant's role in drafting the forged will, witnessing and notarizing the forged will on April 30, 2011, and publishing the forged will in the Key West Probate Proceeding on June 14, 2011 (while knowing that it was

false). [ECF No. 86, ¶¶ 54(A)-(E)]. Plaintiff also alleges that Defendants intended to defraud Plaintiff so that Defendants could allegedly transfer Sally's funds into Forgotten Felines to benefit the enterprise collectively [ECF No. 86, ¶¶ 22-26, 96, 102-03]. Therefore, she adequately alleges the crimes of forgery and the uttering of forged instruments.

Although no party discussed the issue of whether Plaintiff's criminal activity under CRCPA is subject to a heightened pleading standard, the Undersigned finds that the crimes of forgery and uttering of forged instruments *are* subject to the heightened standard of Rule 9(b) in this case because they are claims that sound in fraud as they involve the allegedly deceptive actions of Defendants. *See Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1381 (S.D. Fla. 2012) ("'The particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law.'") (quoting *Llado–Carreno v. Guidant Corp.*, No. 09–20971–CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (internal citation omitted).[13]

---

[13]    Specifically for forgery allegations, the Fifth Circuit Court of Appeals has found that the heightened standard of Rule 9(b) applies. *See Jemison v. CitiMortgage, Inc.*, H-13-2475, 2015 WL 251754, at *2 (S.D. Tex. Jan. 20, 2015) (finding that conclusory forgery allegations do not satisfy Rule 9(b)'s heightened pleading standard) (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (finding that Rule 9(b) applies to "all averments of fraud, whether they are part of a claim of fraud or not."); *see also Tyler v. Bank of Am., N.A.*, 5:12–cv–909–DAE, 2013 WL 5923717, at *4 (W.D. Tex. Oct. 31, 2013) ("Applying Rule 9(b) to Plaintiffs' allegations of forgery was

Because the Undersigned is unclear about each Defendant's role in drafting and executing the allegedly forged power of attorney and healthcare proxy documents or the exact dates this took place, the Undersigned finds that the only sufficient acts to constitute criminal activity under CRCPA is Defendants allegedly forging Sally's will and publishing the will in the Key West Probate Proceeding.

      ii.    *Pattern*

Alleging two crimes that qualify as criminal activity is not enough for a CRCPA claim. The Undersigned must also examine if Defendants criminal activity has continuity or pattern.  To establish a pattern of racketeering activity, "a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).  The pattern requirement has been reduced to a "continuity plus relationship" test. *See id.*

Under this "continuity" requirement, courts require allegations of either open-ended continuity, in which there is an ongoing threat of racketeering activity beyond the predicate act, or closed-ended continuity, where the racketeering occurred over a

---

similarly proper."). This Court finds this logic convincing, and applicable to the forgery crimes alleged in the instant case.

*substantial* period of time. Plaintiff contends that the SAC meets both close-ended and open-ended continuity.  [ECF No. 86, ¶¶ 6, 25, 30-35].

For closed-ended continuity, predicate acts alleged "over a few weeks or months and threatening no future criminal conduct," do not amount to a pattern of racketeering under § 1962(c). *H.J. Inc.,* 492 U.S. at 242; *Jackson,* 372 F.3d at 1266.  Plaintiff *generally* alleges that the pattern of racketeering activity occurred over ten years, but the relevant time period for closed-ended continuity analysis is the period between the related predicate acts.  *H.J. Inc.,* 492 U.S. at 242; *Jackson,* 372 F.3d at 1265.  The only particular criminal acts relevant to the CRCPA claim are the forgery and uttering of forged instrument crimes.

From the four corners of the SAC, the forgery occurred only six weeks before the will was deposited (or uttered) in the Key West Probate Court Proceeding. The allegedly forged will was executed on April 30, 2011 [ECF No. 86-3].  Defendants published Sally's will on June 14, 2011. [ECF No. 86, ¶ 54 (C)]. This truncated time period between the related acts of forgery and utterance of the forged instrument is clearly inadequate for closed-ended continuity.

For open-ended continuity, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the

predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1221 (M.D. Fla. 2004) (quoting *H.J. Inc.*, 492 U.S. at 242-43).

Such a showing may be made with reference to "a traditional criminal enterprise or with respect to an ongoing legitimate business[]" and "encompass a sustained period or set of examples[.]" *Jones,* 18 F.3d at 911-12. However, there is no requirement that the predicate acts each be a part of separate illegal "schemes." *H.J. Inc.*, 492 U.S. at 237, 241–42 n. 3.  A plaintiff attempting to show continuity by reference to the enterprise itself may make use of "the totality of the evidence." *Jones*, 18 F.3d at 913.

As to open-ended continuity, Plaintiff alleges that Defendants' racketeering scheme, which includes the crimes of forgery and uttering of forged instruments, has been occurring for more than 10 years and impacted several other victim/clients in the Key West community, including Carolyn Wilson-Garrrison, Harold Guppy, Benson Martin, Joan Temple, Harry B. Decker, John Gergle, and Joseph Ardolino. [ECF No. 86, ¶¶ 29-35]. Plaintiff alleges that "the methods of commission, as well as the similarity of victims, participants and results, utilized and or employed by the RICO enterprise . . . will continue in the future." [ECF No. 86, ¶ 6].

Plaintiff alleges that Defendants also forged and published these non-party victims' estate planning documents, disinheriting their family members. Plaintiff alleges

that, for these victims, Defendants included as beneficiaries in the forged probate documents non-profits associated with Defendants' enterprise, specifically Forgotten Felines and Whiskas & Paws. [ECF No. 86, ¶¶ 29-35].

Plaintiff attaches Carolyn Wilson-Garrison's and Harold C. Guppy, Jr.'s wills as exhibits to the SAC. [ECF Nos. 86-1; 86-2].  For Ms. Wilson-Garrison, her will lists Forgotten Felines as the main beneficiary of tangible personal property, Richard and Nancy as the personal representatives, and Steadman as a witness, which collectively supports Plaintiff's allegation that Defendants' enterprise committed the crimes of forgery and uttering of forged instruments to other victim/clients in the Key West community. [ECF No. 86-1].

Despite Defendants' arguments that I cannot consider the allegations made about these non-parties, based on the precedential law in this circuit, I conclude that this defense assertion is incorrect.

In *Jones,* the Eleventh Circuit Court of Appeals found that "the totality of the evidence as to [the defendant's] business practices with respect to [other individuals] sufficiently establish[d] a pattern of criminal activity." 18 F.3d at 913 (finding that under the CRCPA, although the two sales of tax shelters to plaintiff were insufficient in and of themselves to constitute pattern, evidence of sales of the tax shelter investments to **other** non-parties established pattern); *Lockheed Martin Corp.,* 314 F. Supp. at 1221

(finding that for assessing pattern on a motion to dismiss, the court can consider "evidence of the defendant's business practices with respect to not just the plaintiff, but others as well.").[14]

However, even though I can consider the crimes of forgery and uttering of forged instruments alleged by Plaintiff for the non-party victim/clients, Plaintiff is still required to meet CRCPA's "more stringent" requirement for pattern. *See Lockheed Martin Corp.*, 314 F. Supp. at 1221-22.

CRCPA requires for pattern of criminal activity "**<u>at least two incidents of criminal activity</u>** that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and **are not isolated incidents**; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity." Fla. Stat. § 772.102(4) (emphasis supplied).

CRCPA further explains that "[f]or the purposes of this chapter, the term 'pattern of criminal activity' shall not include two or more incidents of fraudulent

---

[14]    In *SKS Constructors, Incorporated v. Drinkwine*, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006), similar to the case here, the defendants argued on a motion to dismiss "that the involvement of non-party victims cannot be alleged in support of the continuity element because Plaintiff lacks standing to pursue claims on behalf of others." The district court opined, "[w]hile Plaintiff may not be able to **collect** damages with respect to the injuries of other, unnamed parties, it does not necessarily follow that Plaintiff may not allege injury to others in support of allegations of an ongoing fraudulent scheme, or pattern of racketeering activity." *Id.* (emphasis supplied).

conduct arising out of a single contract or transaction against one or more related persons." Fla. Stat. § 772.102(4). The definition "refers to engaging in at least two 'incidents' of racketeering conduct rather than 'acts' of racketeering conduct set forth in [RICO.]" *State v. Marks*, 758 So. 2d 1131, 1138 (Fla. 4th DCA 2000) (quoting *State v. Lucas*, 600 So. 2d 1093, 1095–96 (Fla. 1992)). "Thus, crimes committed at the *same time* cannot qualify as separate incidents for purposes of proving racketeering conduct under the Florida act." *Id.* (emphasis added).

However, the fact that only a single *scheme* occurs, as Plaintiff alleges here, does not render a CRCPA claim insufficiently pled if there are several *incidents* alleged. *Davis v. S. Bell Tel. & Tel. Co.*, No. 89–2839–CIV, 1994 WL 912242, at *20 (S.D. Fla. Feb. 1, 1994) (holding that multiple solicitations in furtherance of one scheme to defraud customers satisfied CRCPA requirements).

The SAC alleges several incidents of forgery that took place at *several different times* spanning 10 years.  To be sure, the forgery and utterance of forged instrument crimes involving Sally's will, in and of themselves, are not separate incidents, as they were committed contemporaneously and essentially as one act to defraud Plaintiff of her inheritance. Nevertheless, after considering the several other incidents alleged by Plaintiff that Defendants supposedly committed against others as a part of the same

scheme, the CRCPA pleading requirements are met for pattern. Thus, Defendants' motions to dismiss Plaintiff's CRCPA claim are denied.[15]

### E.   Violation of FDUTPA against the Law Firm and Richard (Count 5)

Plaintiff asserts a FDUTPA claim against the Law Firm and Richard. Under her FDUTPA claim, Plaintiff seeks a declaratory determination that Sally's will, healthcare proxy and power of attorney documents were fraudulent.

FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). "What one must allege to state a claim under the FDUTPA is (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

Because Plaintiff's FDUTPA claim is based on deception or fraud (i.e., allegedly forging Sally's will against her wishes), the heightened pleading standards of Rule 9(b) apply. *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015) (finding that Rule 9(b) does apply to plaintiff's FDUTPA claim because plaintiff alleged

---

[15]    The Undersigned notes that Defendants' main challenges to CRCPA were lack of specificity as to alleging criminal activity and lack of pattern. Although there are several other arguments that are usually raised in CRCPA cases, Defendants did not to include them. I address only the arguments that are actually raised in the parties' briefings.

that defendant violated FDUTPA and caused damages through deception); *Koch*, 847 F. Supp. 2d at 1381 (finding that because the complaint "alleges that Defendants committed fraud in the sale of counterfeit wine, the claim must satisfy the particularity requirement of Fed.R.Civ.P. 9(b)."); *Blair v. Wachovia Mortg. Corp.*, No. 5:11-CV-566-OC-37TBS, 2012 WL 868878, at *4 (M.D. Fla. Mar. 14, 2012) (finding that because plaintiff's counts sound in fraud as she alleged that the bank "utilized a fraudulent scheme" to issue the "substantially overvalued ARM loan[s]" to her, her FDUTPA claim had to be stated with  particularity under Rule 9(b)).

Under FDUTPA, an unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1223-24 (S.D. Fla. 2013) (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (internal quotation omitted). Although the Florida Legislature did not, in the FDUTPA, define what an "unfair or deceptive act" is, it has specifically mandated that the Act is to be "construed liberally." Fla. Stat. § 501.202.

Warner Defendants claim that the rendering of legal services does not fit the "trade or commerce" requirement of FDUTPA. Warner Defendants also claim that Plaintiff's FDUTPA claim fails because Plaintiff does not have privity with Richard and the Law Firm. Since privity is not required to bring a FDUTPA claim under Florida law,

the Undersigned will address only Warner Defendants' "trade or commerce" argument.
*See* Fla. Stat. § 501.211 ("**anyone** aggrieved by a violation of this part may bring an
action to obtain a declaratory judgment[.]") (emphasis supplied); *Galstaldi*, 637 F. Supp.
2d at 1057) ("The statute is clear on its face. Any person aggrieved by a violation of the
FDUTPA may seek declaratory and/or injunctive relief under the statute.").

"Trade or commerce" is defined as "the advertising, soliciting, providing,
offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or
any property, whether tangible or intangible, or any other article, commodity, or **thing
of value**, wherever situated[.]" Fla. Stat. § 501.203(8) (emphasis supplied). "Thing of
value" may include "any moneys, donation, membership, credential, certificate, prize,
award, benefit, license, interest, professional opportunity, or chance of winning." *Id.* §
501.203(9).

Federal district courts in this circuit and Florida state courts have found that
attorney conduct does not fit the definition of "trade or commerce" under FDUTPA.
However, that does not mean that "a lawyer's status per se" is "a bar to relief (because
certainly some lawyers may engage in trade or commercial transactions while acting
also as lawyers)[.]" *Kelly v. Palmer, Reifler & Associates, P.A.*, 681 F. Supp. 2d 1356, 1376
(S.D. Fla. 2010).

In *Kelly*, 681 F. Supp. at 1376, the district court found that attorneys sending ***pre-litigation*** demand letters (specifically, sending civil theft letters to individuals accused of shoplifting) did not fall within the statutory definition of trade or commerce. The court held that soliciting or offering a release in exchange for money, through demand letters, is **not** a "thing of value." *Id.* Specifically, it stated that "[t]here is simply no connection or nexus to trade or commerce between [the alleged shoplifter claimants and the firm] through the firm's demand letters." *Id.; see also Economakis v. Butler & Hosch, P.A.*, No. 2:13–cv–832–FtM–38DNF, 2014 WL 820623, at *3 (M.D. Fla. Mar. 3, 2014) (holding that a law firm misstating the requirement of attorney's fees and costs to class members in reinstatement letters that offered the class members an opportunity to reinstate their mortgages does not constitute "trade or commerce" under FDUTPA).

In *Florida v. Shapiro & Fishman, LLP*, the Fourth District Court of Appeal of Florida found that this nexus issue is not resolved when the firm's allegedly deceptive acts occur in the ***actual stages of litigation***. 59 So. 3d 353, 356 (Fla 4th DCA 2011). The state appellate court held that a law firm that allegedly fabricated false documents for use in foreclosure cases to benefit its lending institution clients was not engaged in "trade or commerce" for purposes of FDUTPA. *Id.; see also Law Office of David J. Stern, P.A. v. Florida*, 83 So. 3d 847, 850 (Fla. 4th DCA 2011) (finding that a law firm's actions in prosecuting residential foreclosure actions on behalf of lenders, including its alleged

preparation of forged documents for use in foreclosure cases and recordation in county public records, did not constitute "trade or commerce"); *see also Kapila v. Militzok,* No. 15-60764-CIV, 2015 WL 7272761, at *8-9 (S.D. Fla. Nov. 18, 2015) (ruling that there was no connection between the law firm's alleged misconduct and trade or commerce, where the allegations stated that the Militzok law firm failed to render legal advice, failed to follow the client's instructions, failed to adequately protect the client's interests, and charged excessive fees).

Based on review of the applicable case law, the Court finds that there are two problems with Plaintiff's FDUTPA claim. These problems remain even if I were to assume as true that Richard and the Law Firm fraudulently drafted Sally's power of attorney and healthcare proxy documents and forged her will, and that such actions qualify as deceptive acts.

The first problem is that the Court does not find that the activities of Richard and the Law Firm are covered under the plain language of the statute, as they did not "advertise, solicit, provide, offer or distribute" anything to Sally. From the allegations of the SAC, it appears that Sally was an employee for the Law Firm, and sometime during that relationship, she either legitimately or illegitimately through the actions of Warner Defendants, entered into an attorney-client relationship with Richard and the Law Firm. No advertising, soliciting, or offering is clear from the four corners of the SAC.

The second problem is that both federal and state Florida courts have not yet found that attorney conduct, both in the pre-suit and litigation stages, fits the definition of "trade or commerce." Plaintiff has provided no case law to the contrary. As a result, the Undersigned must **dismiss this count with prejudice.**

<u>Conclusion</u>

Accordingly, the Undersigned **grants in part and denies in part** Defendants' motions [ECF Nos. 93; 101]. As to tortious interference with inheritance (Count 1) and CRCPA (Count 4), Defendants' motions to dismiss are **denied.** As to the remaining counts, Defendants' motions are **granted** as follows:

1.      Violation of RICO (Count 2) is **dismissed without prejudice** (*supra* footnote 7);

2.      Conspiracy to violate RICO (Count 3) is **dismissed without prejudice** (*supra* footnote 7);

3.      Violation of FDUTPA (Count 5) is **dismissed with prejudice**; and

4.      Constructive trust (Count 6) is **dismissed with prejudice.**

5.      For those counts dismissed without prejudice, Plaintiff must seek leave of Court to file a Third Amended Complaint (i.e., her fifth attempt). The motion must be filed within 14 calendar days of the date of this Order and must attach the proposed Third Amended Complaint.

## Civil RICO Case Statement Requirement

As explained above, Plaintiff's federal RICO claims did not pass muster and her CRCPA claim barely made it past the motion to dismiss gateway. The Court appreciates Defendants' express and implicit concerns over the viability of these RICO theories. To the extent that Plaintiff wishes to continue with her CRCPA count, then she must, within 10 days of this Order, file a Civil RICO Case statement for the CRCPA count. If Plaintiff moves to file a Third Amended Complaint in which she realleges the federal RICO claims, then she must at the same time as filing that motion also file a Civil RICO Case Statement for the federal claims.

**The Statement(s) shall use the caption numbers and letters set forth below, and shall state in detail and with specificity the following information:**

1.     **RICO provision.** State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b) (c), and/or (d).

2.     **Defendants.** List each RICO defendant and state the alleged misconduct and basis of liability of each defendant.

3.     **Other RICO violators.** List all alleged RICO violators, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.

4.     **Victims.** List the alleged victims and state how each victim was allegedly injured.

5.     **Pattern of racketeering activity.** Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:

      A.     List the alleged predicate acts and the specific statutes which were allegedly violated;

      B.     Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;

      C.     If the RICO claim is based on the predicate offenses of mail fraud, wire fraud or fraud in the sale of securities, then the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and contents of the alleged failures to disclose and/or misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations and/or failures to disclose were made;

      D.     State whether there has been a criminal conviction for violation of the predicate acts and if so, then provide particulars;

      E.     State whether civil litigation has resulted in a judgment with respect to the predicate acts and if so, then provide particulars;

      F.     Describe how the predicate acts are both "related" and "continuous" within the meaning of *H.J. Inc.*, 492 U.S. at 23 and its progeny.

6.    **Enterprise.**  Describe in detail the alleged enterprise for each RICO claim and specify just what structure it had.  A description of the enterprise shall include the following information:

      A.     The names of the individuals, partnerships, corporations, associations or other legal entities that allegedly constitute the enterprise;

      B.     The purpose, function and course of the enterprise, and whether its usual and daily activities were part of or separate from the pattern of racketeering activity;

      C.     Whether any named defendants are or were employees, officers or directors of the alleged enterprise;

D.      Whether you are alleging that the defendants are or were separate from the alleged enterprise, collectively constitute the enterprise itself, or are or were members of the enterprise; and

E.      Whether (and if so how) the enterprise was affected by or benefitted from the pattern of racketeering activity.

7.      **Interstate or foreign commerce.** Describe the effect of the activities of the enterprise on interstate or foreign commerce.

8.      **Section 1962(a).**  If the complaint alleges a violation of 18 U.S.C. § 1962(a), then provide the following information:

A.      State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

B.      Describe the use or investment of such income.

9.      **Section 1962(b).**  If the complaint alleges a violation of 18 U.S.C. § 1962(b), then describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

10.     **Section 1962(c).**  If the complaint alleges a violation of 18 U.S.C. § 1962(c), then provide the following information:

A.      State who is employed by or associated with the enterprise; and

B.      State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

11.     **Section 1962(d).**  If the complaint alleges a violation of 18 U.S.C. § 1962(d), then describe in detail the alleged conspiracy.

12.     **Injury to business or property.**

A.      Describe the alleged injury to business or property;

       B.      Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

       13.    **Damages.**  List the damages sustained for which each defendant is allegedly liable.

       14.   **CRCPA CLAIMS:**  All the information required for RICO claims should be included. However, to establish pattern under CRCPA, Plaintiff must describe at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics. These incidents cannot be isolated and the last incident must have occurred within 5 years after a prior incident of criminal activity. Furthermore, these incidents cannot arise out a single contract or transaction.

       **DONE AND ORDERED** in Chambers, in Miami, Florida, on February 16, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record